UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CRIMINAL ACTION NO. 08-23-KSF

UNITED STATES OF AMERICA                                                                       PLAINTIFF

V.                                          **OPINION & ORDER**

STEPHEN LAVON SCOTT                                                                         DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on the defendant's motion to suppress [DE #13] and motion for leave to file amended memorandum [DE #19]. The Court held a hearing on March 21, 2008, and the parties were given time to file additional briefs.

The following facts were established at the hearing. Lexington police obtained information from a confidential informant that the defendant was in possession of a large amount of crack cocaine and involved in drug trafficking. The informant provided a general description of the defendant, the location of the alleged activity, and the make and model of the defendant's vehicle (a blue Doge Intrepid). All of this information was later corroborated by law enforcement, who observed conduct they deemed consistent with drug trafficking at the specific location provided (i.e., cars coming and going from the location during a short period of time), and decided to continue surveillance as the defendant left that location.

Officer Bryan Jared of the LFUCG Police Department was contacted by his supervisor to assist in the narcotics investigation of a blue Dodge Intrepid traveling inbound on North Broadway. Officer Jared was nearby and immediately proceeded to the area. While traveling

outbound on North Broadway, he saw the vehicle, made a u-turn, and began to follow the vehicle.  On Hawthorne Drive, he observed the vehicle traveling at a rate of 40 to 45 miles per hour in an area where the posted speed limit was clearly 25 miles per hour.  When the vehicle reached the end of Hawthorne Road, Officer Jared observed the vehicle signal to make a right turn onto Russell Cave Road.  However, after the vehicle initiated the right turn, the driver then turned left and belatedly signaled while he was in the turn.  At that point, Officer Jared initiated a traffic stop, which took place on Hollow Creek Road.

      Officer Jared approached the vehicle, driven by the defendant, and obtained the defendant's driver's license in order to conduct a warrants check.  Officer Jared admitted that, during this initial encounter, he did not observe any suspicious behavior which would lead him to form an articulable suspicion that the defendant was engaged in any illegal activity.  While conducting the warrants check, a drug canine unit arrived at the scene.  Officer Jared had not requested backup nor that a drug dog be brought to the scene.  The decision to bring the drug canine unit to the stop was apparently that of Officer Jared's supervisor, who was also overseeing the narcotics investigation of the defendant.

      Officer Jared requested that the defendant exit the vehicle in order for the canine unit to conduct a "dog sniff" to check for the presence of narcotics.  The drug dog gave a silent positive alert for the presence of narcotics.  At this point, other officers on the scene searched the defendant's vehicle and found drug contraband in the middle console area.  As the officers attempted to arrest the defendant, he resisted and had to be forcefully subdued.  A search of the car ultimately uncovered crack cocaine, powder cocaine, marijuana, and scales.

The defendant argues that these events constituted an illegal seizure of the defendant and an illegal search of his vehicle. He argues that the information provided by the informant was not sufficiently reliable to justify either the stop or the search of the defendant's vehicle, and the alleged traffic violation was not the type of offense that authorized the defendant's arrest, nor a search of his vehicle incident to arrest. Finally, the defendant argues that there was no evidence discovered as part of the normal course of the traffic stop that justified initiating a dog sniff.

Based upon the facts presented, the Court must determine (1) whether there was probable cause for the officers to initiate a traffic stop; and (2) whether there was probable cause for a warrantless search of the defendant's vehicle.

### 1.   *Initial Stop*

The Supreme Court has held that "stopping an automobile and detaining its occupants constitutes a 'seizure' within the meaning of [the Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention is quite brief." Delaware v. Prouse, 440 U.S. 648, 653 (1979). Thus, a police officer must have probable cause to believe that a traffic violation is being committed prior to stopping a motorist. However, because an ordinary traffic stop is more like an investigative detention than a custodial arrest, the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968), define the scope of reasonable police conduct during the stop. See id.; United States v. Palomino, 100 F.3d 446, 449 (6th Cir. 1996).

In this case, the defendant argues that the information provided by the confidential informant was insufficient to justify the stop of the defendant's vehicle. However, the facts indicate that the defendant was stopped not because of information provided by the informant, but because Officer Jared observed the defendant's vehicle commit a traffic violation. It is

irrelevant that the police were following the defendant based on information from the informant. United States v. Davis, 430 F.3d 345, 352 (6th Cir. 2005).  Therefore, the search cannot be suppressed on that basis.

The defendant also argues that he did not commit a traffic violation when turning from Hawthorne Road onto Russell Cave Road under relevant Kentucky statutes and, therefore, there was no probable cause to stop the defendant's vehicle.  This, of course, ignores the fact that Officer Jared also observed the defendant speeding on Hawthorne Road.  Thus, Officer Jared had probable cause to initiate a traffic stop of the defendant *before* the defendant ever reached the intersection at Russell Cave Road.  United States v. Bradshaw, 102 F.3d 204, 210 (6th Cir. 1996).  As long as probable cause for the initial stop is present, an officer may stop a vehicle for a traffic violation even if his true motivation is to search for contraband because the legality of the traffic stop is not dependent upon the officer's motivations.  See Whren v. United States, 517 U.S. 806, 812-13 (1996); United States v. Ferguson, 8 F.3d 385, 391 (6th Cir. 1993) (en banc).

### 2. *Search by Drug-Sniffing Dogs*

The Supreme Court has held that where, as here, the use of a drug-sniffing dog does not extend the length of a traffic stop, no Fourth Amendment concerns are implicated.  Illinois v. Caballes, 543 U.S. 405, 125 S. Ct. 834, 837-38, 160 L. Ed.2d 842  (2005).  In this case it is clear that the drug-sniffing dogs were at the scene almost immediately after the defendant was pulled over by Officer Jared for the traffic stop and that the dog sniff took place during the traffic stop. Thus, the defendant cannot complain that the search by the dogs extended the length of the traffic stop.

Further, the United States Supreme Court has made clear that, where a traffic stop is not extended beyond the time necessary to issue the warning or citation, an officer need not have any reasonable, articulable suspicion or probable cause of illegal activity to initiate a dog sniff. This is based on the Court's ruling that a dog sniff does around the exterior of a motorist's vehicle does not rise to the level of cognizable infringement on the motorist's Fourth Amendment rights. <u>Illinois v. Caballes</u>, 543 U.S. 405 (2005) (holding dog sniff did not violate the defendant's rights under a factual scenario very similar to that presented here).

In this case, had the officers detained the defendant beyond the time necessary to complete the initial traffic stop in order to wait for a canine unit to arrive and conduct a drug sniff, then the defendant might have some argument. However, it is clear that the dog sniff took place *during* the traffic stop and there was no indication (nor allegation) that the stop of the defendant was unlawfully extended. Therefore, there were no Fourth Amendment implications and the motion cannot be suppressed on that basis.

The defendant relies on <u>United States v. Hill</u>, 195 F.3d 258 (6th Cir. 1999), for his argument that an officer must have reasonable, articulable suspicion that criminal activity is afoot prior to initiating a dog sniff on a vehicle stopped for a traffic offense. However, <u>Hill</u> does not stand for so broad a proposition. Rather, that case held that *once the purpose of the traffic stop is completed*, a motorist cannot be further detained to await the arrival of a canine unit unless an officer has reasonable, articulable suspicion of criminal activity. The facts of the defendant's case are much different – because the dog sniff took place during the traffic stop, there was no illegal detention of the defendant. <u>Hill</u> is simply inapplicable under the facts of the present case.

### 4. *Defendant's Arrest and Search of the Vehicle*

Under the search incident to a valid arrest exception, a lawful custodial arrest justifies a contemporaneous warrantless search of the person arrested, as well as of the immediate surrounding area. See Chimel v. California, 395 U.S. 752, 762-63 (1969). The Supreme Court has held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile." New York v. Belton, 453 U.S. 454, 460 (1981) (footnotes omitted). The Sixth Circuit has upheld searches of an automobile incident to arrest, even when the defendant has been separated from his car before the police officers conducted the search. See, e.g., United States v. Hudgins, 52 F.3d 115, 119 (6th Cir. 1995). Moreover, the Supreme Court has found that an arrest for a "fine only" traffic violation, such as speeding, supports a search of the vehicle regardless of the officer's subjective motivation. See Arkansas v. Sullivan, 532 U.S. 769, 771-72 (2001).

Further, as noted by the Sixth Circuit,

> [o]ne of the exceptions to the requirement that the government obtain a warrant before searching private property is the "automobile exception," which excuses the police from obtaining a warrant when they have probable cause to believe that a vehicle they have stopped contains evidence of a crime. See United States v. Pasquarille, 20 F.3d 682, 690 (6th Cir. 1994) (citing Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280, 69 L.Ed. 543 (1925)). It is well-established in this Circuit that an alert by a properly-trained and reliable dog establishes probable cause sufficient to justify a warrantless search of a stopped vehicle. See United States v. Diaz, 25 F.3d 392, 394 (6th Cir. 1994).

Hill, 195 F.3d at 273. The defendant has not contested the reliability of the drug-sniffing dog in this case. Thus, the Court finds that the defendant's arrest and the police search of the

defendant's vehicle after the positive alert by the drug-sniffing dog were both within constitutional bounds.

### 5. *Conclusion*

The initial traffic stop for speeding was not the basis for the search. The positive alert by the drug dog, which conducted its drug sniff during a lawful traffic stop, provided the probable cause for the search. Accordingly, the Court, being otherwise fully and sufficiently advised, HEREBY ORDERS that

(1) the defendant's motion for leave to file amended memorandum [DE #19] is GRANTED;

(2) the amended memorandum shall be filed in the record; and

(3) the defendant's motion to suppress [DE #13] is DENIED.

This March 28, 2008.



Signed By:

*Karl S. Forester*  KSF

**United States Senior Judge**